# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOSEPH MALDONADO<br><br>*Plaintiff,*<br><br>v.<br><br>PROFESSIONAL ANIMAL RETIREMENT CENTER (PARC), aka BLACK PINE ANIMAL SANCTUARY, | Case: 1:25-cv-239-HAB |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF[1]**

**I.   INTRODUCTION**

1. This is a citizen lawsuit, brought pursuant to Section 11(g)(1)(A) of the Endangered Species Act ("***ESA***"), 16 U.S.C. §§ 1531-1544, to address ongoing violations of the ESA and its implementing regulations arising out of Defendants' operation of Professional Animal Retirement Center (PARC), a.k.a. Black Pine Animal Sanctuary, located in Albion, Indiana.

2. PARC is a GFAS[2] accredited roadside zoo that confines and exhibits numerous species of animals, including several tigers, namely, Prince, Ima, Elvis, and Patronus. ("***Big Cat(s)***").

3. Plaintiff, Joseph Maldonado, brings suit against PARC and its principals (collectively

---

[1] This complaint is also a second amended complaint, fixing various problems outlined by this Honorable Court in its Order and Opinion (document 10) filed 05/22/25. Most importantly, this complaint is filed after the 60-day notice period outlined in the Endangered Species Act. 16 U.S.C. § 1540(g)(2)(A)(i). Defendants have ignored the notice and refused to address the issues outlined herein (except in insulting social media posts).
[2] Global Federation of Animal Sanctuaries.

"*Defendants*") for their ongoing "take" of Big Cats in violation of the ESA and its implementing regulations.

4. Specifically, Defendants (1) have spayed and neutered several of the Big Cats in medically unnecessary procedures that sterilize the animals and prevent them from their natural ability and behavior, namely reproduction, thereby wounding, harming, and harassing them; (2) exhibiting Big Cats and forcing them into observation by members of the public, thereby harming and harassing them; and (3) confining the Big Cats in woefully inadequate enclosures, void of adequate shelter, necessary enrichment, and environmental enhancement, including adequate space to roam, climb, and swim, thereby harming and harassing them. As the court emphasized in *People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc*., 471 F. Supp. 3d 745 (S.D. Ind. 2020), exposing big cats to public contact constitutes harassment under the ESA. See also *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc*., No. 1:17-cv-02148, 2020 WL 1166180 (D. Md. Mar. 10, 2020), where substandard housing and lack of enrichment for big cats were held to constitute harm and harassment under the ESA.

5. These practices "wound," "harm," and "harass" the tigers in violation of the ESA's "take" prohibition by causing them physical and psychological injury and distress and significantly disrupt and impair the tigers from carrying out their natural behaviors in a manner that is likely to result in significant physical and psychological injury.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), and has federal question jurisdiction under 28 U.S.C. § 1331.

7. On May 13, 2025, Joseph Maldonado provided notice of his intent to file suit ("Notice of Intent") to Defendants, the Secretary of the Interior, and the Acting Director of the U.S. Fish and Wildlife Service ("*FWS*"). The Notice of Intent is attached and incorporated as **Exhibit 1**. It was served more than sixty days prior to the filing of this action. 16 U.S.C. § 1540(g)(2)(A)(i).

8. Defendants have not remedied the violations set out in the Notice of Intent.

9. The Secretary of the Interior has not commenced an action against Defendants to impose a penalty pursuant to the ESA or its implementing regulations, and the United States has not commenced a criminal prosecution against Defendants to redress a violation of the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(2).

10. The Court has personal jurisdiction over the Defendants because they reside in the Northern District of Indiana and conduct their business within this District. This Court also has personal jurisdiction over PARC because it is an Indiana Corporation with its principal place of business in this District.

11. Venue is proper in the Northern District of Indiana because the violations of the ESA alleged in this Complaint have occurred, and continue to occur, within this judicial district. 16 U.S.C. § 1540(g)(3)(A).

STANDING

12. Courts have held that citizens have standing to assert ESA-based challenges after merely visiting zoos and noticing violations. See, e.g., *Kuehl v. Sellner*, 887 F.3d 845, 850 (8th Cir. 2018).

13. By contrast, Maldonado has standing here because of deep, profound, specific and concrete interests in the welfare and genetic heritage of the Big Cats in question, having bred and maintained their bloodlines for more than sixteen years in partnership with research programs. Courts have recognized standing in similar ESA citizen-suit cases where plaintiffs have a personal or professional stake in the animals' well-being. *See Animal Legal Def. Fund v. Special Memories Zoo*, No. 20-CV-42, 2022 WL 18024657 (E.D. Wis. Dec. 30, 2022) (finding standing based on personal investment in animal welfare); *see also Kuehl v. Sellner*, 887 F.3d 845, 850 (8th Cir. 2018) (affirming standing where plaintiffs filed an ESA claim against the Cricket Hollow Zoo in Iowa and had previously visited and maintained personal or professional connections to the animals involved).

III. **THE PARTIES**

14. Joseph Maldonado is a citizen of the United States who bred and owned the animals in question. Mr. Maldonado, over a 16-year period, selectively bred, and maintained the bloodlines of these animals for use in both a breeding program as well as a research study in conjunction with the University of Texas A&M. Mr. Maldonado has a continued and ongoing interest in seeing these bloodlines maintained and continued for possible further and future research, both during his current incarceration and after his release. Mr. Maldonado, in his breeding and raising of these cats, has developed a lifelong bond with them, and has a specific and ongoing interest in both their well-being, and future legacy continuing.

15. Defendant PARC is an Indiana corporation located at 1426 W 300 N, Albion, IN 46701. On information and belief, PARC exhibits the tigers that are the subject of this action.

## IV. STATUTORY BACKGROUND

16. The ESA defines an "endangered species" as "any species which is in danger of extinction," 16. U.S.C. § 1532(6), and a "threatened species" as "any species which is likely to become an endangered species within the foreseeable future," *id*. § 1532(20).

17. The ESA prohibits the "take" of any endangered species within the United States. *Id*. § 1538(a)(1)(B); 50 C.F.R. § 17.21. It likewise prohibits the taking of any threatened species within the United States unless otherwise provided by a special rule. 16 U.S.C. § 1538(a)(1)(G); 50 C.F.R. §17.31(a).

18. The ESA also prohibits additional activities including, among others, importing, exporting, transporting in the course of commercial activity, and selling or offering for sale in interstate commerce a protected species. 16 U.S.C. §1538(a)(1).

19. The ESA defines the term "take" to include "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C.§ 1532(19).

20. The term "harm" is defined by regulation as an act which "kills or injures" an endangered or threatened animal. 50 C.F.R. § 17.3. The term "harass" is defined by regulation to include an "intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an

– 4 –

extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering.". The term "wound" is not defined by the ESA or its regulations. Its New Oxford American Dictionary definition, as a verb, is "to inflict an injury on"; as a noun, wound is defined as "an injury to living tissue when caused by a cut, typically one in which the skin is cut or broken."

21. Under the ESA, it is also illegal to possess any unlawfully taken endangered species, or any unlawfully taken threatened species unless otherwise provided by a special rule. 16 U.S.C. § 1538(a)(1)(D), (G); 50 C.F.R. §§ 17.21(d), 17.31(a).

22. The ESA authorizes the Secretary of the Interior to issue a permit for any act that is otherwise prohibited by 16 U.S.C. § 1538, but only if such act is "for scientific purposes or to enhance the propagation or survival of the affected species" and other strict requirements are met. 16 U.S.C. § 1539(a)(1)(A), (c), (d).

23. The ESA allows citizens to bring suit to enjoin "any person . . . who is alleged to be in violation" of the "take" provisions of the statute or of a regulation promulgated under the statute. *Id.* § 1540(g)(1)(A).

24. Tigers are listed as "endangered" under the ESA. 50 C.F.R. § 17.11(h).

V. **FACTUAL BACKGROUND**

25. PARC is a GFAS accredited roadside zoo that confines and exhibits numerous species of animals, including tigers, in Albion Indiana.

26. The Global Federation of Animal Sanctuaries (GFAS) is not exempt from Federal Animal Laws. GFAS is simply a private nonprofit accreditation organization that specifies animal care standards and requirements that it holds its members to, to retain membership. Accreditation by GFAS is voluntary and upon information and belief is mainly done for credibility within the sanctuary community and does not grant legal immunity to Federal Law. Despite these standards, PARC fails to adhere to several of these standards in various ways. GFAS accredited facilities are not exempt from Federal law, and despite accreditation, are still subject to, and should remain in compliance with The Endangered Species Act.

27. PARC confines and exhibits numerous tigers that it prominently advertises as formerly belonging to Mr. Maldonado, namely, Prince, Ima. Elvis, and Patronus, and charges the public a fee to view, picnic, drink alcohol, do yoga, play loud music, and even astonishingly, hold car shows very close to the tigers' confined quarters. PARC even holds "day camps" in which small children, whom a tiger would view as a possible prey item, are allowed to draw with sidewalk chalk, right in front of the cats. This is harassment as defined under the ESA, as all the aforementioned activities would constitute "annoying to such an extent as to significantly disrupt normal behavioral patterns. As the court emphasized in *Wildlife in Need*, exposing big cats to public contact constitutes harassment under the ESA.

28. Defendants do not possess an ESA permit or a captive-bred wildlife registration required to take an endangered species from the Secretary of the Interior to "take" tigers, under 16 U.S.C. § 1539(a)(1)(A).

29. Further, PARC would not qualify for such as permit, as PARC's activities are associated with the entertainment industry, which is contrary to the purpose of the permitting program, which is to enhance the propagation of protected species.

A. **DEFENDANTS WOUND, HARM, AND HARASS PROTECTED BIG CATS BY NEUTERING THEM**

30. Defendants were served with the Notice of Intent on May 13th 2025. After service was effectuated, Defendants *changed the picture* of one of the Big Cats on their website, attempting to conceal the fact that Patronus, a protected Big Cat, had not been neutered, and showing a picture to hide the protected big cat's testicles. See Exhibit 6 and 7.

31. Defendants spay and neuter tigers in violation of the ESA, wounding, harming, and harassing them. *See People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc*., 471 F. Supp. 3d 745 (S.D. Ind. 2020).

32. Spaying and Neutering Tigers is illegal and violates the ESA because it can cause ongoing medical issues, discomfort, or other pathological conditions in the animals.

33. Spaying and Neutering Tigers also violates the primary purpose of the ESA by

undermining the recovery and propagation of endangered species.

34. Defendants do not possess an ESA permit or a captive-bred wildlife registration required to take an endangered species from the Secretary of the Interior to "take" tigers, under 16 U.S.C. § 1539(a)(1)(A).

35. Further, PARC would not qualify for such as permit, as PARC's activities are associated with the entertainment industry, which is contrary to the purpose of the permitting program, which is to enhance the propagation of protected species.

36. The American Veterinary Medical Association describes spaying and neutering "a major surgical procedure", and welfare concerns associated with spaying and neutering are heightened for Big Cats. There is no justification for performing the procedure on Big Cats, except as medically necessary, which is exceedingly rare.

37. To spay or neuter a Big Cat, the animal is sedated, a procedure that itself carries significant risk. In fact, multiple facilities, including PARC have had animals die under sedation in the past. On information and belief, PARC itself has had multiple animals die under sedation over the years, including "Mufasa" an African Lion. By definition, a surgery lacerates the animal's skin and tissue, and would be defined as a "wound" under the ESA.

38. Sedation carries inherent risks. These risks can range from relatively minor side effects like hypothermia and low blood pressure to more serious complications such as respiratory or cardiovascular problems, and even death. According to this study from the NIH https://pmc.ncbi.nlm.nih.gov/articles/PMC10814218/ , Cats have a higher risk of anesthetic death than dogs. The rate of mortality following anesthesia and/or sedation in cats can be as high as 0.24%. The primary causes for anesthesia- or sedation-related mortality in cats are cardiovascular or respiratory failure, neurological complications, or renal complications. An association between extremes in age and body weight and an increased risk of mortality following sedation and anesthesia has been recognized in cats. Senior and pediatric patients are more susceptible to the depressant effects of anesthetics, have

prolonged recovery due to decreased hepatic blood flow and impaired thermoregulation, and have limited ability to respond to abnormal physiologic states such as hypotension. Obese patients are not only susceptible to comorbidities due to an enhanced pro-inflammatory state, but they also have reduced cardiovascular reserves and impaired ventilation and mobility due to excessive fat deposition.  Many of the tigers at issue are older cats, and some are obese.

39. This procedure interferes with the animals' normal behavior including by inhibiting their ability to scent mark, hormonal changes, and engaging in breeding. Neutering can be associated with a higher risk of certain cancers in some animals, including bone cancer, prostate cancer, and hemangiosarcoma (cancer of blood vessel lining). Some studies suggest a link between neutering and an increased risk of orthopedic problems like hip and elbow dysplasia and cruciate ligament ruptures. Reduced testosterone levels after neutering can lead to a slower metabolism and increased appetite, potentially causing weight gain if not properly managed. Many of the cats residing at PARC that have been altered in this manner are obese. Neutering removes the primary source of testosterone, which can affect other aspects of health beyond reproduction, such as bone density and muscle mass. While neutering typically reduces aggression, it can sometimes lead to increased fearfulness or shyness in some individuals.

40. Defendants spay/neuter tigers *for their convenience*, rather than because it is medically necessary for the animals. On information and belief, Defendants neuter the tigers in their possession to stop the animals from practicing and exhibiting "scent marking", which is a natural behavior for a tiger. On information and belief, Defendants do this to make it easier to exhibit the animals and therefore profit from their exhibition to the public. These practices are illegal under the ESA.

41. Upon information and belief, Defendants spay/neuter the tigers to alter their natural behavior, making them more docile, inactive, and to keep them from scent marking, so that they can exhibit and display them for profit from customers, including young children during "day-camps", and renting out their facility for private parties.

**B. Defendants Harm and Harass Protected Big Cats by EXHIBITING Them, AND Forcing Them into Public View**

42. As the court emphasized in *Wildlife in Need*, exposing big cats to public contact constitutes harassment under the ESA.

43. PARC routinely exhibits tigers for profit and forces the tigers into direct public view, including of and by children. Tigers' swimming pools are located directly adjacent to the walkways, thereby forcing the Tigers to be in public view if they want to exercise natural behavior. This constitutes a "take" and contravenes generally accepted husbandry practices in violation of the ESA. As the court emphasized in *Wildlife in Need*, exposing big cats to public contact constitutes harassment under the ESA.

44. For captive animals such as PARC's Tigers, proximity to humans is a source of stress and can be extremely harmful to animal well-being. Stress in animals compromises immunity, impairs coronary health, alters brain structure and function, impairs reproduction, stunts growth, reduces body weight, shortens lifespan, and increases abnormal behaviors.

45. Such agitation increases the likelihood of injury to the Tigers, thereby harassing them. This conduct significantly disrupts the animals' normal behavioral patterns by making it impossible for them to swim without being viewed by public.

46. This public display also causes psychological injury and distress to the tigers and exposes the tigers to significant risk for physical injury. Further, given that Big Cats normally spend over three-quarters of their day resting and sleeping, loud noises, and being forced to be on view to members of the public forces them to reduce resting time and is therefore inherently disruptive to their normal behavior.

47. This creates a likelihood of injury because it disrupts normal sleep and rest behaviors, which are essential to natural development and physical health, thereby harassing and annoying the animals in violation of the ESA. *See also Wildlife in Need*, where the Court held that exposing big cats to the public constitutes 'harm' and 'harassment' under the ESA.

48. Forcing these predators to be on display for humans, and denying them the opportunity to

escape from public observation, violates ESA regulations and is not a generally accepted animal husbandry practice. This practice harms the animals, creates a likelihood of injury to them, and annoys them, by significantly disrupting their normal behavioral patterns, in violation of the ESA's "take" prohibition.

49. Further, Defendants harass Big Cats by depriving them of the ability to express simulated natural hunting behaviors such as stalking and predation, creating a likelihood of injury to them by annoying the Big Cats to such an extent as to significantly disrupt normal feeding behavioral patterns. The conditions in which these Big Cats are kept thus constitute, and will continue to constitute, a "take" in violation of the ESA.

### C. Defendants By Their Own Admission, Do Not Have Sufficient Funds to Properly care for Protected Big Cats.

50. PARC makes posts on their website and Facebook page indicating that it costs approximately $50,000.00 per year, per Big Cat, to provide proper care. However, PARC's most recent tax filings do not reflect this amount spent or raised on behalf of the Big Cats in their care.

51. This points to a lack of funds on behalf of PARC to properly care for the Big Cats in their care, even though PARC continues to accept more animals into their facility. See Exhibits 2 and 3. This constitutes a "take" and contravenes generally accepted husbandry practices in violation of the ESA.

52. The financial inadequacy of the Defendants further supports the finding of ongoing harm and harassment under the ESA. In *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, No. 1:17-cv-02148, 2020 WL 1166180 (D. Md. Mar. 10, 2020), the court emphasized that the cost of adequately feeding and caring for a single tiger can exceed $10,000 annually. In that case, the defendants' inability to meet such financial obligations was found to contribute directly to violations of the ESA, as inadequate funding leads to substandard conditions that cause physical and psychological injury to the animals. Similarly, the court in *Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018), affirmed a

finding that inadequate funding at the Cricket Hollow Zoo directly contributed to the zoo's failure to meet acceptable animal care standards, thereby causing harm and harassment to protected species.

53. Similarly, Defendants' tax records and public financial statements fail to demonstrate sufficient resources to support the basic needs of the tigers in their care. Without adequate funding, Defendants cannot provide the necessary food, veterinary care, enrichment, and secure housing that are essential for the animals' well-being. These financial deficiencies result in continued harm and harassment, as defined under the ESA, and further illustrate why the Defendants are unfit custodians of these endangered animals.

54. In addition to their harmful and harassing conduct, Defendants also lack the financial resources necessary to meet even the minimum standards of care for the tigers in their possession. In *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc*., No. 1:17-cv-02148, 2020 WL 1166180 (D. Md. Mar. 10, 2020), the court found that the inability to afford proper care—where it costs approximately $10,000 per year to feed and care for a single tiger—contributed significantly to the animals' suffering and was a relevant factor in determining violations under the ESA.

55. Carole Baskin, founder of Big Cat Rescue and TAOS, the accrediting body absorbed by the Global Federation of Animal Sanctuaries, states that including adequate housing, food, veterinary care, and environmental enrichment, the funds needed to care for these big cats would exceed the amounts defendants have claimed to spend on their most recent tax returns. See Exhibit 4.

56. Defendants' ongoing exhibition and possession of endangered animals despite these limitations constitutes further violation of the ESA, compounding the physical and psychological harm the tigers endure. As in *Tri-State Zoo* and *Kuehl*, the combination of inadequate care and financial inability creates a persistent likelihood of injury and distress to the animals, qualifying as 'harm' and 'harassment' under the ESA.

**Defendants Harm and Harass Endangered Big Cats by Denying Them Safe, Appropriate Housing and Adequate Environmental Enrichment**

57. In the wild, tigers' territories range from $7.72\text{mi}^2$ to $154.44\text{mi}^2$, depending on the availability of prey.

Within these ranges, tigers are free to engage in natural behaviors such as swimming, climbing, stalking, and predation. They occupy a variety of habitats, typically comprising dense vegetative cover, sufficient prey populations, and access to water. Tigers are generally solitary; however, they are known to come together for breeding, feeding, and sometimes to socialize and travel in groups.

58. Given their natural needs, tigers require large, environmentally rich, natural spaces that allow them to express a wide range of behaviors. Captive environments that do not provide the environmental enrichment necessary to promote the expression of a full range of species-typical behaviors have a detrimental effect on the animals' physical and psychological well-being. Indeed, Big Cats in sterile environments like the ones at PARC experience long periods of inactivity or mindless activity, which results in permanent long-term changes to the body, brain, neural, and endocrine systems. Psychological distress can often leave Big Cats with higher blood cortisol levels, which can trigger displacement behavior, apathy, learned helplessness, and even severe capture myopathy. Enrichment is necessary to deter harmful behaviors such as self-mutilation and stereotypical behaviors such as pacing, which has been observed in Big Cats at PARC. See Exhibit 5. Harmful behaviors such as self-mutilation and pacing, in addition to evidencing psychological distress, can lead to other physical injuries. In the wild or in a reputable sanctuary, a Tiger would have the ability to exercise, explore, and engage in other species-typical behaviors. *See People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, No. 1:17-cv-02148, 2020 WL 1166180 (D. Md. Mar. 10, 2020).

59. Enrichment plans for captive carnivores, including tigers, are difficult to develop due to these animals' natural feeding and hunting behaviors and spatial needs. In inadequate captive conditions, thwarted hunting prospects alone appear to cause carnivores like tigers to suffer stress, which causes physical and psychological injury. Accordingly, enrichment plans should include natural and complex enclosures and environmental enrichment including whole- carcass feeding, novel toys/objects, scratch logs, introduction of new smells, enclosure rotations, pools, and adequate space to run. *See also Tri-State Zoo*, where substandard housing and lack of enrichment for big cats were held to constitute 'harm' and 'harassment' under the ESA.

60. In addition to providing social privacy, enclosures should provide shade and include "various substrates, surfaces to mark, deadfall for scratching, and other aspects in their enclosure that will change their pathways and create complex behavioral opportunities." *Id.*

61. Defendants harm and harass protected Big Cats by confining them to small, barren enclosures, denying them appropriate, natural and complex housing, and frustrating their natural instincts. The enclosures lack enrichment and force Big Cats to walk and rest in full view of the public in order to express species specific behaviors.

62. Defendants also harm and harass Big Cats by depriving them of adequate enrichment. Inadequate enrichment thwarts the expression of a range of natural behaviors, including, for example, predatory and investigatory behaviors. *See also Tri-State Zoo*, where substandard housing and lack of enrichment for big cats were held to constitute 'harm' and 'harassment' under the ESA.

63. The enclosures at PARC do not encourage the Big Cats to engage in instinctual and species-specific behaviors, including simulated natural hunting behaviors such as stalking and predation, and are therefore inadequate to provide for the animals' physiological and psychological well-being.

64. Failure to provide Big Cats with adequate protection from the elements creates a likelihood of injury, including hypothermia and illness, by denying them the ability to engage in normal behaviors such as hiding, resting, and sheltering without exposure to inclement weather, or choosing to find a more suitable location, PARC's climate, where the weather requires confining the animals indoors for multiple months out of the year, doesn't match the natural habitat of Tigers in the wild, thereby harassing them in violation of the ESA.

65. The Big Cats' outdoor enclosures also do not provide them with adequate shade from the sun, or inclement weather such as snow, contrary to generally accepted animal care standards and AWA regulation. See 9 C.F.R. § 3.127(a). Denying captive Big Cats necessities such as appropriate shelter physically harms them, and significantly disrupts their normal behaviors, including sheltering and resting behaviors, in a way that puts their physical and psychological well-being at risk of injury.

66. Despite the established authority on the environmental needs of Big Cats, Defendants continue to confine them in inappropriate and unsafe environments, without necessary enrichment, and therefore wholly fail to meet their physical, social, and psychological needs. These inadequate conditions cause the Big Cats to suffer psychological injury. The conditions further harm the Big Cats' physical and psychological health by depriving them of the ability to express a full range of natural behaviors such as simulated predatory behaviors, investigatory behaviors, and social avoidance behaviors, including the autonomy to choose to engage with or avoid others, which are central to their physical and psychological well-being. See also Tri-State Zoo, where substandard housing and lack of enrichment for big cats were held to constitute 'harm' and 'harassment' under the ESA.

### DEFENDANTS' ACTIONS HAVE FRUSTRATED MALDONADO'S PREVIOUS AND FUTURE RESEARCH

67. Maldonado bred these cats as part of an ongoing research study that he had in place with the University of Texas A&M. These cats' genetics are and were essential to that research, and Maldonado has a compelling interest in the bloodlines being maintained and continued into the future. These cats were selectively bred by Maldonado for this purpose. Due to these facts, Mr. Maldonado also has an intense bond with each of these cats and has a continued interest in their well being.

## VI. CLAIMS FOR RELIEF

### Count I—Unlawful "Take" of Protected Species

68. Maldonado incorporates by reference all allegations of the Complaint.

69. The Endangered Species Act, 16 U.S.C. § 1538(a)(1)(B), (G) and its implementing regulations, 50 C.F.R. §§ 17.21, 17.31(a), prohibit the "take" of "any [listed] species" not otherwise provided for by a Section 4(d) special rule, within the United States without a permit.

70. Defendants have violated and continue to violate the ESA and its implementing regulations by taking tigers, within the meaning of the ESA, without a permit, at PARC.

71. This Court has the authority to issue an injunction prohibiting Defendants from committing further violations of the ESA and ordering them to relinquish possession of the tigers, to appropriate reputable sanctuaries. 16 U.S.C. § 1540(g)(1)(a).

72. There is ample reason to believe that Defendants will continue to neuter the Big Cats and to use the Tigers in their fund raising events unless they are enjoined and restrained from such illegal conduct. Indeed, Defendants have repeatedly confirmed that they will neuter the Big Cats both by attempting to hide the fact that some have not already been neutered, and continue to use the tigers in the public events in which they charge money to attend, and take donations for, and enrich themselves from this activity.

73. Maldonado has a substantial likelihood of succeeding on the merits.

74. The harm to the Big Cats from neutering (i.e., irreversible sterilization surgery) and from the hundreds of events held in close proximity to the animals (i.e., distress and other physical and psychological health problems) is permanent and irreparable and substantially outweighs any harm to Defendants, if immediate injunctive relief is not issued. *See People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc.*, 471 F. Supp. 3d 745 (S.D. Ind. 2020).

75. As a result of Defendants' unlawful conduct, the tigers have suffered and will continue to suffer immediate and irreparable physical and psychological harm for which there is no adequate remedy at law.

76. Defendants, on the other hand, will suffer virtually no harm by simply being ordered to comply with the ESA.

77. The public interest will be served by enjoining and restraining Defendants' unlawful and improper conduct as it will prevent further violations of the ESA.

78. Defendants should therefore be temporarily restrained and preliminarily enjoined from neutering and exhibiting the Big Cats in their possession, custody, and control pursuant to Fed. R. Civ. P. 65.

**Count II—Unlawful Possession of Species Taken in Violation of the ESA**

79. Maldonado incorporates by reference all allegations of the Complaint.

80. The Endangered Species Act, 16 U.S.C. § 1538(a)(1)(D), (G) and implementing regulations, 50 C.F.R. §§ 17.21(d), 17.31(a), prohibit the possession, by any means whatsoever, of any species taken in violation of the ESA.

81. Defendants have violated and continue to violate the ESA and its implementing regulations by possessing and continuing to possess unlawfully taken species, including tigers, within the meaning of 16 U.S.C. § 1538(a)(1)(D) and (G).

82. This Court has the authority to issue an injunction prohibiting Defendants from continuing to possess tigers, in violation of 16 U.S.C. § 1538(a)(1)(D) and (G) and 50 C.F.R. §§ 17.21(d), 17.31(a), 17.40(r), and ordering them to relinquish possession of these animals to appropriate reputable sanctuaries. 16 U.S.C. § 1540(g)(1)(A).

### Relief Requested

WHEREFORE, Maldonado respectfully requests that this Court:

A. Declare that Defendants are violating the ESA by illegally taking tigers, 16 U.S.C. § 1538(a)(1)(B), (G); 50 C.F.R. §§ 17.21(c), 17.31(a), 17.40(r);

B. Declare that Defendants have violated and continue to violate the ESA by possessing tigers, who have been illegally taken, 16 U.S.C. § 1538(a)(1)(D), (G); 50 C.F.R. §§ 17.21(d)(1), 17.31(a), 17.40(r);

C. Temporarily and permanently enjoin and restrain Defendants from continuing to violate the ESA and its implementing regulations with respect to tigers, including the prohibitions on taking a listed species and possessing a listed species that has been unlawfully taken;

D. Temporarily and permanently enjoin and restrain Defendants from owning or possessing endangered or threatened species, or hybrids thereof, in the future;

E. Temporarily and permanently enjoin and restrain Defendants from neutering any of the Big Cats in their possession, custody, or control;

F. Temporarily and permanently enjoin and restrain Defendants from exhibiting Big Cats and publicly displaying them in the public events and exhibition.

G. Enter a permanent injunction against Defendants that terminates all Defendants' ownership and possessory rights with respect to the tigers.

H. Appoint a special master or guardian ad litem to identify reputable wildlife sanctuaries and to determine the most appropriate placement for the forfeited animals, consistent with the animals' best interests, in the animals' country of origin or a climate most similar to their climate of origin.

I. Award Maldonado reasonable attorneys' fees and litigation costs (including expert witness expenses) for this action, 16 U.S.C. § 1540(g)(4); and

J. Grant Maldonado such other and further relief as the Court deems just and proper.

Date: August 15, 2025                                   Respectfully submitted,

/s/ Roger Roots
Roots Justice
10 Dorrance Street
Suite 700
Providence, Rhode Island 02903
(662) 665-1061

– 18 –

**VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in this Verified Complaint for Injunctive and Other Relief are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true. I declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on this day of August 15, 2025, in Livingston, MT

*Roger I. Roots Esq*